OTTERY, D.B.A. DRG REAL ESTATE, APPELLEE, *v.* BLAND ET AL., APPELLEES; COGAN ET AL., APPELLANTS; SHONKWILER ET AL., APPELLEES.

(No. 86AP-851 — Decided September 22, 1987.)

*Sheppard & Bale, Alan W. Sheppard*; and *Marvin Miller,* for appellee Stephen A. Ottery.

*Henry Maser,* for appellees Walter T. Bland and Carol J. Bland.

*Kelly M. Morgan & Co.* and *Kelly M. Morgan,* for appellants Barbara J. Cogan and Robert B. Cogan.

*Robins, Preston & Beckett Co., L.P.A.,* and *John A. Sentz, Jr.,* for appellees John Shonkwiler and Bob Webb Company.

BRYANT, J. Robert B. and Barbara Cogan, third-party defendants and third-party plaintiffs-appellants, appeal from a judgment of the Franklin County Court of Common Pleas finding them liable on the claim of defendants and third-party plaintiffs-appellees, Walter T. and Carol Bland, and denying them recovery against any of the appellees.

In late spring 1982, appellants were looking for a larger home. During the course of their doing so, they met appellee, John Shonkwiler, a real estate agent with appellee Bob Webb Company, who showed them the Blands' home. Although that particular home previously had been listed with Shonkwiler, it was at that time listed by DRG Realty, with whom plaintiff-appellee, Stephen Ottery, was employed.

Through a series of offers and counteroffers, the Blands, operating through Ottery, and the Cogans, negotiating through Shonkwiler, arrived at a signed real estate contract. Although the contract was based on the standard Columbus Bar Association form, Mr. Bland added to one of the clauses dealing with real estate taxes: "Seller will pay the next bill when due. There will be no tax proration at the closing."

Shortly before the closing, the Cogans contacted an attorney who, in checking title, discovered an easement involving the Blands' property and that of their neighbor. The easement arose out of a concrete pad which was entirely on the Blands' property; however, access to the pad required an easement over the neighbor's property. Moreover, in discussing the real estate tax clause with the parties, the Cogans' attorney learned that the Cogans and Blands interpreted that clause entirely differently. The Blands claimed that the "next tax bill" referred to the June 1982 tax bill for the last half of 1981. On the other hand, the Cogans, basing their belief on what Shonkwiler had told them, assumed that the "next tax bill" referred to the next bill after the July 15 closing, the

December 1982 tax bill for the first half of 1982.

Upon discovering the discrepancy, the Cogans' attorney contacted Mr. Bland, who refused to pay the December 1982 tax bill. The attorney for the Cogans accused him of being in an anticipatory repudiation of the contract. As a result, although all pertinent persons, except Mrs. Cogan, appeared for the closing, the closing did not occur. Eventually the Blands sold their home for the same price agreed upon with the Cogans, and paid a real estate commission to one other than appellee Stephen Ottery, as a result of that sale.

Appellee Ottery filed a complaint against the Blands for his real estate commission, claiming that he had procured a ready, willing, and able buyer with an enforceable contract; although the Cogans and the Blands had not closed, Ottery claimed he had nonetheless fulfilled his obligations and was entitled to his commission. The Blands then filed a third-party complaint against the Cogans, claiming that if they were liable to Ottery, the Cogans were liable to them. The Cogans filed a counterclaim against the Blands and also filed an additional third-party complaint against Shonkwiler and Bob Webb Company, alleging misrepresentation and fraud in procuring the Cogans' consent to the real estate contract at issue.

At trial, counsel for Ottery presented his case. Counsel for the Blands cross-examined Ottery's witness, but the court refused to allow any of the other parties to cross-examine that witness at that time. At the conclusion of the Blands' defense to Ottery's claim, the court directed a verdict against the Blands. The Blands then presented their evidence against the Cogans, and at the conclusion of the evidence on that claim and the Cogans' defense thereto, the court directed a verdict against the Cogans in favor of the Blands. The court directed a verdict against the Cogans on their claim against the Blands as well. At that point, the court suggested that the parties arrive at an agreed amount for damages as that issue presented little factual dispute. The only claim presented for the jury's consideration was the Cogans' claim against Shonkwiler and Bob Webb Company. The jury returned a verdict in favor of Shonkwiler and Bob Webb Company.

Subsequent to the trial, the Blands sought prejudgment interest on the agreed amount of damages between the Blands and the Cogans. Despite the Cogans' opposition, the court granted prejudgment interest in favor of the Blands.

The Cogans have appealed, setting forth five assignments of error:

"1. The court erred in directing a verdict in favor of Ottery.

"2. The court erred in directing a verdict in favor of Blands against Cogans.

"3. The court erred in holding as a matter of law that appellants should indemnify Blands on Ottery's claim for the real estate commission.

"4. The trial court erred in awarding prejudgment interest on Blands' claim against Cogans.

"5. The error of the trial court was so pervasive and prejudicial to the Cogans that a fair and unbiased consideration of Cogans' claim against Shonkwiler was impossible for the jury."

We first address appellants' second assignment of error, wherein appellants contend that the trial court erred in directing a verdict in favor of the Blands against appellants. In directing a verdict, the trial court found the language of the contract clear and therefore not subject to jury deliberation. We agree that the issue raised by appellants' second assignment of error

properly may be resolved as a matter of law. Nonetheless, in applying accepted principles of contract construction we disagree with the result the trial court reached and sustain appellants' second assignment of error.

In interpreting the contract herein, the additional terms supersede the original terms to the extent the two are contradictory. If the additional terms are ambiguous, then we are to give effect to the additional terms but we are to interpret them consistently with the original terms to the extent possible. *Ford Motor Co.* v. *John L. Frazier & Sons Co.* (1964), 8 Ohio App. 2d 158, 161, 95 Ohio Law Abs. 164, 167-168, 29 O.O. 2d 379, 381, 196 N.E. 2d 335, 337-338. Accordingly, our construction of the contract should attempt to harmonize all the provisions rather than produce conflict in them. See *Farmers Natl. Bank* v. *Delaware Ins. Co.* (1911), 83 Ohio St. 309, 94 N.E. 834. To that end, no provision of the contract should be ignored as inconsistent if there exists a reasonable interpretation which gives effect to both. *Expanded Metal Fire-Proofing Co.* v. *Noel Constr. Co.* (1913), 87 Ohio St. 428, 434, 101 N.E. 348, 350. Moreover, to the extent we encounter an ambiguity in the contract, that ambiguity must be construed against the drafting party. *McKay Machine Co.* v. *Rodman* (1967), 11 Ohio St. 2d 77, 80, 40 O.O. 2d 87, 89, 228 N.E. 2d 304, 307.

In assessing responsibility for real estate taxes, appellants' original offer, paragraph five ("original terms"), stated:

"5. At closing, Seller shall pay or credit on purchase price all delinquent taxes, including penalty and interest, *all assessments which are a lien on the date of contract* and all agricultural use tax recoupments for years through the year of closing. At closing Seller shall *also pay or credit on the purchase price*

*all other unpaid real estate taxes which are a lien for years prior to closing and a portion of such taxes for year of closing prorated through date of closing * * *."* (Emphasis added.)

Accordingly, pursuant to appellants' original offer, and assuming a July 15 closing date as the parties had scheduled, the Blands were responsible for the June 1982 tax bill for the last half of 1981, for the December 1982 tax bill encompassing the first half of 1982, and for the prorated portion of taxes from June 30, 1982 to July 15, 1982.

In responding to appellants' offer, the Blands did not eliminate the language of the original offer, but instead added to their counteroffer several paragraphs, including paragraph three ("additional terms"): "Seller will pay the next bill when due. There will be no proration at the closing." The final contract contained both the original terms and the additional terms. Inasmuch as the meaning of the additional terms is unclear, we must apply the rules of construction noted above.

Under the Blands' interpretation of the additional terms, the Blands were obligated to pay only the June 1982 tax bill covering the last half of 1981; appellants were responsible for the December 1982 tax bill for the first half of 1982, despite the fact that the Blands owned and lived in the property during that entire period. Yet, under the original terms, the Blands were responsible for not only the June 1982 tax bill but also the December 1982 tax bill, and further were responsible for reimbursing the Cogans for the December 1982 tax bill at the proposed July 15 closing. Hence, the only reasonable interpretation of the additional terms so as to render them consistent with the original terms is: the Blands remained responsible for the December 1982 tax bill, the next bill after

closing; however, the Blands were not required to reimburse the Cogans therefor at closing, but pursuant to the additional terms could delay payment until the tax bill became due in December 1982. Moreover, consistent with that arrangement, any proration was eliminated under the additional terms to obviate any need for the Blands to reimburse appellants for any real estate taxes at closing.[1] Such being the only interpretation of the contract which gives effect to both the original as well as the additional terms as required by law, the trial court erred in interpreting the contract to the contrary.

While there has been a suggestion that the parties' differing interpretation was so great as to preclude a meeting of the minds, and therefore, the formation of a contract, such is not the case. See, *e.g., Johnson* v. *Shrieves* (App. 1935), 20 Ohio Law Abs. 306. Given the foregoing and the only reasonable interpretation of the contract under accepted rules of construction, it was the Blands, and not Cogans, who breached the contract by refusing to pay the entire December 1982 tax bill.

Consequently, the Blands were not entitled to indemnification from the Cogans for Ottery's claim against the Blands; the trial court erred in ruling that they were and in directing a verdict in their favor. Appellants' second assignment of error is sustained.

Given our ruling on appellants' second assignment of error, to the extent any of the other four assignments of error addresses an error the trial court committed, that error cannot be prejudicial to appellants. Therefore, appellants' first, third,[2] fourth, and fifth assignments of error are overruled.

Having sustained appellants' second assignment of error, we reverse the judgment of the trial court insofar as it renders judgment in favor of the third-party plaintiffs Blands against the third-party defendants Cogans and remand this matter to the trial court for entry of judgment in accordance with this opinion.

*Judgment reversed in part and cause remanded.*

WHITESIDE and YOUNG, JJ., concur.

---

[1] By closing, the Blands should have already paid the June 1982 tax bill.

[2] While the wording of appellants' third assignment of error would suggest that we also should sustain it as a result of our sustaining appellants' second assignment of error, the third assignment of error, as argued, is not encompassed by our ruling on the second assignment of error.