36 F.3d 1097
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Arthur F. LEMLEY, Plaintiff-Appellee,
v.
FORD MOTOR CO., Defendant-Appellant.
 No. 93-3363.
 United States Court of Appeals, Sixth Circuit.
 Sept. 7, 1994.
 
 Before: KENNEDY and SILER, Circuit Judges; and BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant Ford Motor Co. ("Ford") appeals the district court's award of summary judgment in favor of plaintiff Arthur Lemley ("Lemley") in this action for a declaratory judgment to determine the rights of Lemley under a settlement agreement between the two parties.[1] The district judge determined that the agreement was unambiguous and that, as such, it supported Lemley's claim. Finding the settlement agreement to be ambiguous, we reverse and remand for further proceedings.
 
 I.
 
 2
 Lemley worked for Ford from March 24, 1976 to March 11, 1985, when he left work permanently due to a disability, carpal tunnel syndrome. In 1986, Lemley brought three lawsuits against Ford,[2] all of which were settled by a "Complete and Final Release, Settlement Agreement and Covenant Not to Sue" between the two parties in August 1989. This agreement stated in part:
 
 
 3
 6. ... except as provided in Paragraph 15 below, this Release shall operate to completely and finally release, discharge, and satisfy all claims alleged or which could have been alleged by Releasor [Lemley] against Releasee [Ford] as a result of the alleged occupational disease diagnosed March 18, 1985....
 
 
 4
 * * *
 
 
 5
 8. In consideration of the Release of all claims referenced above by releasor, the Releasee agrees to cause to be paid to Releasor, and his attorney the sum of One Hundred Thousand Dollars....
 
 
 6
 * * *
 
 
 7
 10. In further consideration for the Release of these claims, Releasee agrees to arrange for Releasor to be credited with sufficient service time to make Releasor eligible for consideration for a disability pension.
 
 
 8
 * * *
 
 
 9
 12. Pursuant to the provisions of the Federal Rules of Civil Procedure, Releasor shall cause the lawsuit captioned "Arthur Lemley v. Ford Motor Company and John Hancock Mutual Life Insurance Company," Case No. C86-2462 to be dismissed with prejudice as to all parties.
 
 
 10
 * * *
 
 
 11
 15. The Releasor and Releasee expressly acknowledge that this entire release is contingent upon Releasor being granted a disability pension in the amount of $438.00 per month and John Hancock Fill In Benefits of $632.00 per month commencing effective September 1, 1989. If Releasor is not granted such a pension on the specified terms, this release shall be null and void. If Releasor is granted a disability pension on the above specified terms, the terms of this agreement shall be fully and finally effective. If Releasor is granted the disability pension, payment of the monies due under this agreement shall be made within twenty working days after Releasee receives written notification from Releasor or his attorney of the granting of such disability pension....
 
 
 12
 J.A. at 21-24.
 
 
 13
 As suggested by p 15 above, two types of benefit plans, negotiated by Ford and the United Auto Workers ("UAW"), are relevant to this case. First, the "Retirement Plan" provides "disability retirement benefits" or "disability pensions" to retired employees, apparently until death. Benefits include monthly pension payments, medical insurance coverage, and survivorship options. Workers apply for such disability pensions to the Ford-UAW Retirement Board of Administration; a Retirement Trust pays the benefits. To be eligible for a disability pension, an employee must have ten years of "creditable service," which may include periods of medical leave, and thus may include periods of time after the onset of a disability and before retirement.
 
 
 14
 Second, the Group Life and Disability Program ("Group Program"), administered by John Hancock, provides monthly payments called "Extended Disability Benefits," or "Fill In Benefits," to totally disabled employees. The amount of Fill In Benefits is based upon an employee's years of "creditable service" under the Retirement Plan and on the employee's wage rate. However, according to Ford, the duration of the monthly Fill In Benefits depends not on "creditable service" but on the employee's "years of seniority as of the day on which disability commenced," which, unlike "creditable service," cannot include periods of time after the disability commenced. Employees with "ten or more years of seniority as of the day on which disability commenced" receive Fill In Benefits until the sooner of when the disability ends or age 65. J.A. at 128-129. (Here the district court's decision would require Ford to pay Lemley benefits until his death.) Other employees with less seniority receive Fill In benefits for a shorter period of time.
 
 
 15
 After Ford and Lemley signed the settlement agreement, Lemley received monthly benefits of $1070 (that is, $632 plus $438) from Ford pursuant to the agreement.[3] In November 1990, however, Lemley received a letter from Ford indicating that the $632 portion of the monthly benefit described by Ford as the Fill In Benefit would expire on December 17, 1993. Ford's position is that under the terms of the Group Program, Lemley's benefits would expire in December 1993 because Lemley had less than ten years of "seniority" at the time his disability commenced. Lemley then brought an action seeking a declaratory judgment declaring "[t]hat Plaintiff was an employee of Ford Motor Company, for purposes of his disability pension and John Hancock Fill In Benefits, for 10.10 years of service[,]" and "[t]hat Defendants be ordered to make monthly payments to the Plaintiff representing his disability pension and John Hancock Fill In Benefits, each computed on the basis of Plaintiff's 10.10 years of credited service, until his death." J.A. at 18. Ford and Lemley each moved for summary judgment.
 
 
 16
 In March 1993, the district judge denied Ford's motion for summary judgment[4] and granted Lemley's motion for summary judgment,[5] holding that Ford must pay Lemley $632 per month Fill In Benefits and $438 per month in disability pension "until his death or relinquishment of his right to receive such benefits." J.A. at 291. The court found that "the unambiguous language of the Agreement requires payment of the Fill In Benefits for the duration of the disability pension." Id. at 290. Since the court found the settlement agreement unambiguous, it refused to consider extrinsic evidence of negotiations about the agreement. The court further noted that p 15 of the settlement agreement did not limit the duration of the Fill In Benefits.
 
 II.
 
 17
 On appeal, we address two issues. First, Ford argues that the district court erred in holding that the settlement agreement unambiguously created a duty to pay Lemley Fill In Benefits without regard to the terms of the underlying plan. Second, Ford contends that it is entitled to summary judgment because Lemley's failure to dismiss his lawsuit against Ford, as promised in the settlement agreement, was a material breach of contract which precludes Lemley from recovery under the settlement agreement.
 
 III.
 
 18
 We first address whether the district court erred in holding that the settlement agreement unambiguously created a duty to pay Lemley Fill In Benefits without regard to the terms of the underlying plan. Ford first contends that the language of p 15 does not support the district court's decision that Ford had to pay Lemley $1070 per month until his death. The company asserts that p 15 imposes no obligations on either party, but rather is a condition precedent to Lemley's obligation to release Ford and Ford's obligation to pay Lemley $100,000. The condition, according to Ford, is that Lemley receive benefits of a specific nature, pursuant to specific ERISA benefit plans: "a disability pension in the amount of $438 per month and John Hancock Fill In Benefits of $632 per month." Ford also asserts that the court erred by ordering Ford to pay the $438 per month disability pension, because such pensions are neither approved nor paid by Ford itself, and erred by ordering it to pay Fill In Benefits contrary to the underlying terms of the Group Program administered by John Hancock.
 
 
 19
 Ford next argues that by interpreting p 15 to require Ford to pay $1070 per month, the district court rendered the language describing the nature of the payments irrelevant and superfluous, while effect should be given to all words of a contract when possible. If the parties intended that Ford would pay Lemley $1,070 per month for life, Lemley's service time, as addressed in p 10, would be irrelevant, according to Ford.
 
 
 20
 Ford further contends that the trial court effectively held that p 15 displaced the terms of the Group Program. If p 15 were also interpreted to displace the terms of the Retirement Plan, which provides for disability pension payments, according to Ford, then except for the $438 per month, Lemley would be denied benefits under the Retirement Plan such as possible increases in monthly payments, medical insurance benefits, and survivorship options. Ford also avers that even Lemley's complaint and motion for summary judgment recognized that Fill In Benefits are governed by a particular plan, and that their duration depends upon whether Lemley was credited with the appropriate time.
 
 
 21
 Lemley responds that the district court was correct in holding that the agreement was unambiguous and requiring Ford to pay Lemley $1070 per month for life. According to Lemley, the court was correct that the agreement did not limit the duration of the Fill In Benefits, and that therefore the agreement reflected an intent to provide benefits "for the duration of retirement."
 
 
 22
 Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that no genuine issue of material fact exists and that the moving party is entitled to a judgment as a matter of law. FED.R.CIV.P. 56(c). We review the grant of summary judgment by a district court de novo. EEOC v. University of Detroit, 904 F.2d 331, 334 (6th Cir.1990). Moreover, we have previously addressed the standard of review for questions of contract interpretation and ambiguity under Ohio law:
 
 
 23
 Under Ohio law, interpretation of written contract terms is a matter of law for initial determination by the court. It is only when the relevant contract language is ambiguous that the job of interpretation is turned over to the factfinder, ... and the determination whether a contract is ambiguous is made as a matter of law by the court. We review the District Court's legal conclusion regarding ambiguity de novo.
 
 
 24
 Potti v. Duramed Pharmaceuticals, Inc., 938 F.2d 641, 647 (6th Cir.1991) (citations omitted); see also Parrett v. American Ship Bldg. Co., 990 F.2d 854, 858 (6th Cir.1993); Construction Interior Systems, Inc. v. Marriott Family Restaurants, Inc., 984 F.2d 749, 754 (6th Cir.), cert. denied, 114 S.Ct. 194 (1993).
 
 
 25
 "Ambiguity exists only where a term cannot be determined from the four corners of the agreement or where contract language is susceptible to two or more reasonable interpretations." Potti, 938 F.2d at 647. If a contract does contain ambiguities, they must be construed against the drafting party: "he who speaks must speak plainly or the other party may explain to his own advantage." McKay Mach. Co. v. Rodman, 228 N.E.2d 304, 307 (Ohio 1967); see Franck v. Railway Express Agency, 112 N.E.2d 381, 383 (Ohio 1953); Ottery v. Bland, 536 N.E.2d 651, 654 (Ohio Ct.App.1987). If the court determines that an agreement is ambiguous, its meaning becomes a question for the factfinder, who may consider extrinsic or parol evidence to assess the intent of the parties. See Ohio Historical Soc. v. General Maintenance and Eng'g Co., 583 N.E.2d 340, 344 (Ohio Ct.App.1989) ("Parol evidence is admissible only if the terms of the contract are ambiguous and then only to interpret, but not to contradict, the express language."); see also Island Refuse Transfer Co. v. Browning-Ferris Indus. of Ohio, Inc., 474 N.E.2d 271, 274 (Ohio 1984) (holding "[extrinsic] evidence is admissible when the court must construe an ambiguous or missing term.").
 
 
 26
 Upon our de novo review, we find that the district court erred in determining that the settlement agreement between Ford and Lemley was unambiguous. We cannot determine the intent of the parties from examining the four corners of the settlement agreement alone, and we find that the agreement is subject to more than one reasonable interpretation. See Potti, 938 F.2d at 647. First, it is not clear whether p 15 incorporates the terms of the Retirement Plan and the Group Program administered by John Hancock into the settlement agreement. More specifically, it is not clear whether the terms of the Group Program, which caused Lemley's Fill In Benefits to terminate in December 1993, limit Lemley's right to a pension under the settlement agreement. Second, p 15 contains no explanation of the duration of the monthly payments. See Inland Refuse, 474 N.E.2d at 273 (holding that where terms of agreement did not address duration of agreement, issue of material fact precluded summary judgment). "[I]f a term cannot be determined from the four corners of a contract, factual determination of intent or reasonableness may be necessary to supply the missing term." Id. Third, it is not clear how the provision in p 10 which requires Ford to arrange for Lemley to be credited with sufficient service time to make him eligible for a disability pension refers only to the disability pension ($438.00) or to the total pension he would receive if his seniority were modified for purposes of the Group Program as well. Fourth, although the district court ordered Ford to make monthly payments to Lemley, it is not clear under the agreement that Ford undertook to be responsible for paying Group Benefits (Fill In Benefits) to Lemley, benefits provided by trust plans. It is not within our purview to resolve these ambiguities. Upon remand, the parties will be allowed to submit extrinsic or parol evidence relating to the intent of the parties, and the factfinder will interpret the ambiguous settlement agreement in the light of relevant and admissible parol evidence.[6]
 
 
 27
 We next consider whether Ford is entitled to summary judgment because Lemley's failure to dismiss his lawsuit against Ford, as promised in the settlement agreement, was a material breach of contract which precludes Lemley from recovery under the settlement agreement. Ford complains that although p 12 of the agreement required Lemley to dismiss his federal lawsuit, Lemley did not take any action to do so. Ford had to file a motion to have the action dismissed, which was granted. Ford complains that it therefore incurred additional legal costs, arguing that "[a] party which breaches a contract cannot enforce the contract through his own action for breach of contract." Lemley responds that if he did breach the agreement, it was not a material breach which would prevent him from recovering under the agreement.
 
 
 28
 Ford's contention is without merit. Since the federal lawsuit was dismissed without opposition upon Ford's motion, Ford was not prejudiced, and there was no material breach of the agreement by Lemley.
 
 IV.
 
 29
 For the reasons mentioned, we VACATE the district court's award of summary judgment to Lemley and REMAND for further proceedings not inconsistent with this opinion.
 
 
 30
 SILER, Circuit Judge, dissenting.
 
 
 31
 I respectfully dissent. The parties and the district court have all asserted that the settlement agreement is unambiguous. Obviously, the parties disagree on the legal meaning of the unambiguous terms. Lemley thinks that paragraph 15 of the settlement agreement provides him benefits of $1,070.00 monthly until death. On the other hand, Ford suggests that it provides for disability pension benefits of $438.00 monthly plus Fill In Benefits of $632.00 monthly until expiration on December 17, 1993. After that date, Ford would only pay the disability pension of $438.00 monthly.
 
 
 32
 As the majority opinion states, the interpretation of written contract terms in Ohio is a matter of law for the court to determine. If there is no ambiguity, then the court should resolve the case. Without reviewing all pertinent clauses in the settlement agreement and the Retirement Plan, one might think there is ambiguity. However, when paragraph 15 is studied along with paragraph 10 in the settlement agreement, it is clear that if the district court's decision is correct, then paragraph 10 is surplusage in the agreement. In other words, when the district court found the settlement agreement required Ford to grant a lifetime pension of $1,070.00 monthly, that meant paragraph 10 had no meaning, for paragraph 15 did not need paragraph 10 under that interpretation, for these benefits.
 
 
 33
 Instead, paragraph 10 obviously was a reference to Lemley's rights under the Retirement Plan. Ford complied with that part of the agreement, crediting Lemley with ten years of service and making him eligible for a disability pension.
 
 
 34
 The Fill In Benefits are distinct and are granted under the Group Program. As the majority states, their duration is not computed upon "creditable service," but is based upon "ten or more years of seniority" when disability commences. They are separate from a disability pension. Paragraph 15 refers to a "pension" and a "disability pension" which could only refer to the "disability pension" mentioned in line 2 of paragraph 15.
 
 
 35
 Finally, it does not make sense that Ford agreed to provide the Fill In Benefits for a lifetime, as those benefits were not controlled by Ford, but by John Hancock, which was not a party to the settlement. Even the disability benefits of $438.00 monthly were administered by the Retirement Trust, not Ford, but that is not an issue here, as Lemley has continued to receive this pension.
 
 
 36
 Therefore, I would find the district court correctly held the settlement agreement to be unambiguous, but erred when it found the agreement provided benefits of $1,070.00 monthly for life. Instead, summary judgment should have been granted to Ford, resulting in Lemley's receiving the disability benefits of $438.00 monthly and being entitled to other benefits, such as medical insurance, under the Retirement Plan.
 
 
 
 [1]
 Lemley originally filed this action in an Ohio state court. In its Notice of Removal, Ford claimed that the district court had both federal question jurisdiction, because the action arose under ERISA, and diversity jurisdiction, since complete diversity existed between plaintiff and defendants (John Hancock Mutual Life Insurance Company was also originally a defendant but was later dismissed)
 
 
 [2]
 One suit involved insurance benefits, another related to a workers' compensation claim, and a third alleged an intentional tort claim against Ford relating to the disability
 
 
 [3]
 In December 1989, the Retirement Board granted Lemley a life-long disability pension of $430 per month, based on 10.10 years of credited service. J.A. at 27-28. Lemley had already received Fill In Benefits even before he entered the settlement agreement with Ford
 
 
 [4]
 In its December 1992 motion for summary judgment, Ford claimed it was entitled to summary judgment because it had fully complied with the unambiguous terms of the settlement agreement by crediting Lemley with service time for purposes of the pension plan. Ford further averred that the unambiguous agreement did not require it to credit Lemley with anything for purposes of Fill In Benefits, nor did the agreement specify the duration of the payment of Fill In Benefits. See J.A. at 109-110. In the alternative, Ford asserted that if the agreement were ambiguous, parol evidence would then be admissible to demonstrate that Ford did not agree to change Lemley's seniority date for purposes of the calculation of Fill In Benefits. J.A. at 112-113
 
 
 [5]
 In his December 1992 motion for summary judgment, Lemley claimed that by informing him that the Fill In Benefits would cease in December 1993, Ford had anticipatorily breached the settlement agreement, which implied that "both the disability pension and the Fill In benefits were to be paid for the same length of time." J.A. at 198. Lemley further contended that any ambiguity in the settlement agreement should be construed against the drafter, Ford. Id
 
 
 [6]
 Ford further contends that it is entitled to summary judgment under the unambiguous terms of the settlement agreement because it does not require Ford to credit Lemley with any time for the purposes of the calculation of Fill In Benefits. Since we determine that the agreement is ambiguous, Ford's contention is without merit