JOURNAL ENTRY and OPINION
Defendants-appellants Bert and Jane Zellers appeal from the trial court orders that entered judgment in favor of plaintiff-appellee Farina Realty, Inc. d.b.a. Century 21 Farina Realty on its complaint for a brokerage commission.
Appellants assert the trial court's orders are flawed for two reasons: 1) appellee failed to sustain its burden to prove its entitlement to a commission; and 2) the trial court improperly altered the basis for appellee's claim in awarding judgment to appellee. After a thorough review of the record, this court agrees with appellants; therefore, the trial court's orders are reversed and judgment is entered for appellants on appellee's complaint.
Appellee's complaint resulted from its association with appellants that began in late spring of 1997. At that time, Joe Haberak, one of appellee's sales associates, became aware appellants were interested in selling a property they owned. The property consisted of a tavern with an upstairs party center and an adjacent lot. Haberak approached appellant Bert Zellers and offered his services as a real estate broker.
On June 5, 1997 appellant Bert Zellers, working with Haberak as the agent, signed an exclusive listing agreement with appellee. The pertinent terms of the agreement provided as follows:
 1. In consideration of the services to be performed by Century 21 Farina Realty (hereafter called Farina). The undersigned hereby grant (sic) to Farina the sole and exclusive right to sell my/our real property on the following terms and conditions* * *[:]
* * *
 List Price $395,000 180 day term: From 6/5 1997 through 9/6 1997. If during the listing term Farina obtains an offer to purchase the property at the listing price or if the property is sold or exchanged at any price and upon any terms to which I may consent, I agree to pay Farina a commission of ten percent (10%) of the total selling price, or ($3,500), whichever amount is greater. I also agree that such a commission shall be paid if the property is sold or exchanged by the undersigned within six (6) months following the term of this Agreement or extensions thereof, to anyone to whom Farina or its cooperating broker have submitted the property, and of whom I have received notice. This Exclusive Right to Sell Agreement shall serve as escrow instructions subject to the Escrow Agent's usual conditions of acceptance. Seller agrees to pay the above commission by irrevocable assignment of escrow funds at the time of closing.
(Emphasis added.)
Haberak thereafter placed information regarding the property into the multiple listing service[1] and advertised its availability in the newspaper. He soon received a response from Nick Summa. On June 23, 1997 Haberak met Summa at the property to show it to him. Summa subsequently visited the property alone to familiarize himself with appellants' business.
On August 28, 1997 Haberak met with Summa to write up an offer, proposal. Haberak took the offer to appellants.[2] Since Summa's offer did not satisfy appellants, they proposed a counter-offer. The process of offering and counteroffering, with Haberak acting as emissary, went on from well, over a period of a month or two months. Haberak thus continued in his efforts to sell appellants' property to Summa although the one-hundred-eighty-day term of the listing agreement expired on September 6, 1997.
On September 18, 1997 some progress was made between the parties to the proposed real estate transaction. Summa submitted a formal offer to purchase appellants' property for $370,000.00. Summa agreed to provide a $5,000 note as earnest money and a $50,000 cash down payment and desired the remaining amount to be financed through a land contract.
Summa's offer this time was made in writing on a standard form provided to him by appellee. Some of the terms Summa proposed were not included on the form; therefore, Haberak prepared an addendum to the form he labeled Second. This addendum bore an original date of September 9, 1997. The addendum was attached to the agreement form as a third page and incorporated by Haberak's placement of a handwritten reference in Section O of the form. The addendum included nine handwritten additional terms relating to the land contract financing.
When presented with Summa's formal written offer, appellant Bert Zeller stated he could not accept it; he indicated he desired more ready money from the transaction. To accomplish this, appellant suggested to Haberak his commission be decreased to compensate for the lower sale price of the property.
Haberak acquiesced. To formalize this alteration, Haberak used a form labeled Modification and Supplement [To] Purchase Agreement. Haberak crossed out the word Purchase and substituted the word Listing. Next to the number 5, which was the only completely blank portion of the form, Haberak wrote the words Brokerage fee shall be 7% of $370,000. Haberak dated the form September 18, 1997 and signed it. Appellants also signed this form.
At that point, Haberak included this change into the formal written offer from Summa. In Section T, which authorized the escrow agent to pay appellee's commission from the funds available upon completion of this transaction, Haberak wrote the words See listing agreement modification form dated 9/18/97.
Haberak observed during the process of negotiation, Mr. Zeller was upstairs * * * converting it back to a banquet room. Haberak said, [W]hat are you doing this for, maybe the buyer won't agree with this. Appellant indicated he and Summa had spoken about the matter. Haberak thereupon obtained appellants' signatures at the bottom of the addendum and upon the formal written offer that indicated they had accepted it.
However, Haberak noticed Summa had not placed the date next to his signature on the addendum. When Haberak returned to Summa to remedy this oversight, Summa indicated he wished to include a tenth item requiring appellants to have the banquet room upstairs to be completed: electrical [and] plumbing to code. [E]xcept floor coverings. Summa placed his initials by this change but still did not date his signature. Moreover, Haberak made several other notations upon the document indicating the financing scheme still had not been resolved.
This latest change caused appellant Bert Zellers to rethink the entire transaction. He refused to place his initials on the addendum changes and told both Haberak and Summa that he wasn't able to live with the deal.
Although Haberak sought to consummate the agreement by bringing the parties together on September 21, 1997, the endeavor was unsuccessful. Following one more unsuccessful attempt on September 24, 1997 to renegotiate terms acceptable to both Summa and appellants, Haberak ceased his efforts to sell appellants' property.
Appellants and Summa, however, continued their relationship. Eventually, Summa purchased the property from appellants on March 24, 1998.
On October 29, 1998 appellee filed this action in the Cuyahoga County Court of Common Pleas seeking payment of the commission on the sale of appellants' property. In pertinent part, appellee's complaint stated:[3]
 3) On June 5, 1997, Plaintiff and Defendants entered into an exclusive listing contract, a copy of which is attached and marked as Exhibit A, and made a part of this pleading by reference. Pursuant to said agreement Plaintiff was authorized to procure a purchaser for the real property and business and Defendants agreed to pay Plaintiff a commission of Ten per cent (10%) of the sale price. The listing contract stated that commission was to be paid to Plaintiff if seller sold or exchanged the property within six (6) months following the term of the Agreement or extensions thereof, to anyone to whom Farina or its cooperating broker have submitted the property, and of whom the seller was notified.
 4) Under the terms of the exclusive listing Plaintiff was to procure a buyer on terms and conditions that were acceptable to Defendants. Plaintiff did procure a contract for Defendant which was signed by Defendants and buyer and is attached (Exhibit B)[.]
 5) Defendants later sold the property to the buyer that Farina had procured for them and Defendants have not paid the commission.
 6) Plaintiff has performed all of the terms and conditions of the contract. * * *
The case proceeded to a bench trial. The trial court heard the testimony of Haberak, Summa, appellant Bert Zellers and, briefly, appellee's licensed broker Richard Farina. Subsequently, the trial court pronounced on the record its findings of fact and conclusions of law. In pertinent part, the trial court stated:
 THE COURT: Let me make some findings of fact here. The parties entered into an exclusive listing agreement, which I believe is Exhibit A, if I can find it here.
* * *
 The agreement was entered into on June 5th, 1997, and was to continue through September 6th, 1997. The parties, that is, Farina Real Estate and Mr. Zellers, in fact, continued to have relationships with each other at least through September 24th, 1997, after Mr. Farina, on September excuse me Mr. Zellers, on September 21st, 1997 told Farina and told Mr. Summa that he was not satisfied with the terms of the agreement.
 We don't have, I believe, any testimony here as to when Farina stopped doing anything in connection with this sale to try to consummate it, but it is clear from Defendant`s Exhibit 2 that on September 24th he (sic) was still trying to do it.
* * *
 And [the modification of the listing agreement] would certainly indicate that from this, that the intention of the parties was that if Farina and Mr. Zellers, that they were going to have a relationship on this, that lasted beyond September 18th.
 Because there was still a further document that had to be signed. The question that's been presented here as to whether the addendum that bears Mr. Zellers' and Mrs. Zellers' signature on it on September 18th, reflected a complete meeting of the minds on which this contract [for the sale of the property] was to provide, or whether there were still some unresolved issues.
 I want to say I do not think that the plaintiff has met its burden of proof here of showing that there was an agreement, a meeting of the minds, on September 18th.* * *
* * *
 However, it seems to me that this relationship [between appellants and appellee] did not end on September 18th, and it did not end on September 21st, and it did not end on September 24th. And that there is an agreement here that, ultimately there was a contract [for the sale of the property] entered into on March 24th, which would be within the six-month period.
 And so I think on that basis they (sic) are entitled to seven percent commission that they ultimately negotiated at, so I will enter a judgment for the plaintiff for the seven percent commission, which interestingly enough, I don't know that we've had much testimony on what the exact amount is, but I don't think there was any disagreement on that. * * *
Appellants subsequently filed their appeal designated App. No. 77647 from the trial court's original entry of judgment upon the foregoing pronouncements.
However, the case thereafter was remanded to the trial court for a correction of the amount of the judgment rendered for appellee. Upon the trial court's order of judgment for appellee in the amount of $25,900, together with prejudgment interest from March 24, 1998, appellants filed a second notice of appeal, which was designated App. No. 78149. Appellants' appeals since have been consolidated for briefing and disposition.
Appellants present the following two assignments of error for review:
 I. THE TRIAL COURT ERRED IN GRANTING JUDGMENT IN FAVOR OF PLAINTIFF/APPELLEE, A REAL ESTATE BROKER, ON ITS CLAIM FOR A COMMISSION WHERE NO SALE OCURRED (SIC) WITHIN TIME PERIOD SPECIFIED IN ITS EXCLUSIVE LISTING AGREEMENT. (Transcript 194-95.)
 II. THE TRIAL COURT ERRED IN CONCLUDING THAT THE PARTIES HAD EXTENDED THE LISTING TERM OF AN EXCLUSIVE REAL ESTATE LISTING AGREEMENT BY THEIR CONDUCT WHERE BOTH THE BROKERAGE AGREEMENT AND OHIO LAW REQUIRED ALL AMENDMENTS TO BE IN WRITING. (Transcript 195.)
Appellants essentially argue the trial court lacked a proper basis for its entry of judgment in appellee's favor. They contend since appellee sought relief based upon a written contract but failed to prove the elements of a cause of action for breach of that contract, the trial court's judgment in appellee's favor must be reversed. This court agrees.
Appellee's complaint was based solely upon the exclusive listing brokerage agreement signed by appellant Bert Zellers. That agreement unambiguously provided appellee would obtain its commission only if two conditions were met: 1) it produced a legitimate buyer during the listing term who offered the listed price; or 2) it produced a legitimate buyer within six months following the term, referred to as the survival period, to whom the property actually was sold.
In its complaint, appellee implied it had met the first condition, since it referred to its Exhibit B as a contract. Appellee's Exhibit B attached to the complaint, however, was a copy of merely a Letter of Intent to purchase appellants' property signed by Summa dated August 28, 1997. This document contained terms and conditions that at that time constituted only the beginning of negotiations by Summa and appellants.
By the time of trial, appellee had shifted its proof to that of the second condition. It sought to establish a sale of the property at less than the listed price had occurred on September 18, 1997, within the six-month survival period. The trial court correctly concluded this theory, too, lacked foundation in the evidence since the testimony and the documents themselves demonstrated appellants and Summa on that date still had not agreed on the terms set forth in the Second Addendum. Thus, no sale occurred on that date. In fact, the parties stipulated Summa did not purchase the property until March 24, 1998.
Realizing its position remained tenuous, appellee argued to the trial court during closing argument the survival period had been extended by appellee's continued attempts until September 24, 1997 to consummate the real estate transaction.
Although the trial court found this argument to be persuasive, it lacks merit since appellee and appellants had a written listing agreement governed by Ohio law. The provision limiting the time of appellee's agency was an integral part of the contract. Ohio Real Estate Comm. v. Thomas (1966), 7 Ohio App.2d 93. Therefore, it could be extended only in writing. See, e.g., R.C. 4735.18(A)(28).
 In this case, the property was not conveyed to [appellee] until long after the [six-] month period described in the agreement had expired. Consequently, under the plain language of the agreement, appellants were not entitled to a commission, even though they had introduced the buyer and the seller. Kern v. Century 21 Launders 
Assoc., Inc. (July 21, 1995), Lake App. No. 94-L-102, unreported, 1995 WL 453134; Geyer Assoc. Realty, Inc. v. Eschtruth (Mar. 25, 1992), Lorain App. No. 91CA005133, unreported, 1992 WL 64176. [Appellee's] interpretation of the contract renders itinternally inconsistent, does not harmonize all of its provisions, and allows for the absurd result that the contract would be illegal as a brokerage contract with no expiration date under former R.C. 4735.18(A)(27). See Hybud Equip., 64 Ohio St.3d at 666, 597 N.E.2d at 1102; Brannon v. Troutman (1992), 75 Ohio App.3d 233, 237, 598 N.E.2d 1333, 1336; Ottery v. Bland (1987), 42 Ohio App.3d 85, 87, 536 N.E.2d 651, 654.
Wolfer Ent., Inc. v. Overbrook Dev. Corp. (1999), 132 Ohio App.3d 353
(appeal not allowed [1999], 86 Ohio St.3d 1420). (Emphasis added.)
In this case, appellee failed to present to appellants a buyer ready, willing and able to purchase the property at the listed price during the exclusive listing period. Appellee also failed to consummate a purchase agreement between appellants and Summa during the six-month survival period. Krantz v. Petrow (Nov. 17, 1989), Lake App. No. 88-L-13-135, unreported. Under these circumstances, appellee was not entitled to a commission pursuant to its contract with appellant Bert Zellers.[4]
Wolfer, supra; Kern v. Century 21 Launders Assoc., Inc. (July 21, 1995), Lake App. No. 94-L-102, unreported.
In stating the foregoing, this court finds the facts in this case distinguishable from those set forth in Wells v. Kucharski (May 28, 1992), Cuyahoga App. No. 60383, unreported (Sweeney, J., dissenting). The broker in Wells was deemed to have earned his commission when, through his continuous efforts, he eventually obtained, from a buyer procured during the term of the listing agreement, that buyer's letter of intent to purchase the property upon the exact terms set forth by the seller in the listing agreement. Appellee in this case neither procured a buyer willing to purchase the property upon the seller's terms as set forth in the listing agreement nor consummated a sale of the property within six months of the termination of the listing agreement.
Therefore, the trial court erred in granting judgment to appellee on its complaint for breach of contract. Appellants' assignments of error, accordingly, are sustained.
The orders of the trial court are reversed. Judgment is entered for appellants.
This cause is reversed and judgment is herein entered for the appellants.
It is, therefore, considered that said appellants recover of said appellee their costs herein.
It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, J. and FRANK D. CELEBREZZE, JR., J. CONCUR
[1] Quotes are testimony given by a witness at the trial on this matter.
[2] Summa's written offer of August 23, 1997 was one of the documents appellee attached to its complaint pursuant to Civ.R. 10(D).
[3] Appellee's complaint contained an additional count naming Summa as a defendant and seeking to obtain some of the money he was paying appellants pursuant to the land contract. Appellee later dismissed this count and Summa from the action.
[4] Additionally, as the trial court noted but about which it did not seem concerned, appellee failed at trial to present adequate evidence of the actual amount of the commission it alleged was due pursuant to a listing agreement. Presumably, this failure caused the trial court's difficulties in rendering an accurate judgment.