OPINION
{¶ 1} Plaintiff-appellee, Rita Stratton, was admitted to the associate degree nursing program at the East Liverpool campus of defendant-appellant, Kent State University ("KSU"), in the fall of 1994. At that time, appellee was given a Student Handbook which governed her participation in the program for the entire time she was a student. The handbook provided the following:
 {¶ 2} "8. Students who are considered `withdrawn' or `failed' after admission to the nursing program are as follows:
 {¶ 3} "A. One who has officially withdrawn from a nursing course or one who has interrupted the nursing sequence for any reason.
 {¶ 4} "B. One who fails to complete the course requirements as outlined in the course syllabus.
 {¶ 5} "C. One whose final grade in theory is less than a `C.'
 {¶ 6} "D. One whose clinical grade is `failing' for that course.
 {¶ 7} "9. Students in the `withdrawn' or `failed' category may apply for readmission to the nursing program one time only.
 {¶ 8} "10. Students have the responsibility to initiate a meeting with the Director of Nursing at their respective campus to discuss the readmission policy and process. This should be done at the earliest possible date.
 {¶ 9} "11. Admission and/or readmission to the nursing program is based on the availability of clinical spaces.
 {¶ 10} "12. Students applying for readmission to the nursing program must meet the academic requirements in the catalog in effect at the time of application for readmission to the program. If the student is being readmitted to the first course in the nursing sequence, a minimum cumulative G.P.A. of 2.50 is required. If the student has successfully completed the first semester in the nursing sequence, a minimum cumulative G.P.A. of 2.00 is required.
 {¶ 11} "13. Any student who fails to meet the nursing program progression requirements a second time will be dismissed from the nursing program and will not be eligible for readmission.
 {¶ 12} "14. Recognizing that there are extenuating circumstances, the Director of Nursing, with a consultation of a nursing faculty committee, may consider a student for readmission on an individual basis."
 {¶ 13} In the fall of 1994, appellee withdrew from a class because her father-in-law passed away. The Director of Nursing, Joyce Heise ("the DON"), permitted appellee to retake the class. Again, in the fall of 1995, appellee needed to retake another class because she received a "D" in the class. The nursing program requires a grade of "C" or better to pass.
 {¶ 14} In the spring semester of 1997, appellee received a "D" in Maternal/Newborn Developmental Self-Care, 20211. When appellee discovered that she had to obtain a "C" in Maternal/Newborn Developmental Self-Care, she made an appointment with the DON. The DON readmitted her and signed her preadmission form to retake the class in the summer 1997. The preadmission was entered into the computer system on April 14, 1997, which was also the same day the final exam for Nursing Agency III was given. She received a passing grade in Maternal/Newborn Developmental Self-Care in the summer. She sat in the lecture portion of Nursing Agency II in the fall of 1997 to prepare for Nursing Agency III in the spring of 1998; however, she was not officially registered and did not pay tuition to audit the class. Sometime after appellee began to retake the course in Maternal/Newborn Developmental Self-Care, it was discovered she also had received a "D" in Nursing Agency III. In November 1997, she was informed by the new DON, Dr. Connie Vitale, that she was not registered for Nursing Agency III because she was no longer in the nursing program. Nursing Agency III was the last course appellee needed to complete to earn her associate nursing degree. In 1999, KSU notified appellee she had not been readmitted because she would be unable to complete the course within the required time.
 {¶ 15} Appellee filed a complaint against KSU in Portage County Court of Common Pleas in August 1999. That complaint was dismissed and a complaint was filed in the Court of Claims alleging breach of contract and seeking specific performance and monetary damages. A bifurcated trial was held. The Court of Claims held that KSU breached the contract and awarded appellee $14,556, but found that appellee had received $12,446 in grants which resulted in refunds to her in the amount of $11,230.08. The court found the grants constitute a collateral source pursuant to R.C. 2743.02(D). KSU filed a timely notice of appeal and raises the following assignments of error:
 {¶ 16} "Assignment of Error No. 1:
 {¶ 17} "The Court of Claims decision is against the manifest weight of the evidence.
 {¶ 18} "Assignment of Error No. 2:
 {¶ 19} "The Court of Claims erred in refusing to leave the record open to allow KSU to supplement the record with the testimony of Dr. Connie Vitale.
 {¶ 20} "Assignment of Error No. 3:
 {¶ 21} "The Court of Claims erred as a matter of law in finding that the Director of Nursing had the authority to readmit Ms. Stratton to the program in the absence of extenuating circumstances.
 {¶ 22} "Assignment of Error No. 4:
 {¶ 23} "The Court of Claims erred as a matter of law in holding that the decision of Dr. Vitale was arbitrary and capricious.
 {¶ 24} "Assignment of Error No. 5:
 {¶ 25} "The Court of Claims erred in the calculation of Ms. Stratton's damages.
 {¶ 26} "Assignment of Error No. 6:
 {¶ 27} "The Court of Claims erred in not finding that Ms. Stratton failed to mitigate her damages."
 {¶ 28} By the first assignment of error, KSU contends that the decision of the Court of Claims is against the manifest weight of the evidence. Judgments which are supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.2d 279, syllabus. In Bleicher v. Univ. of Cincinnati College of Med. (1992), 78 Ohio App.3d 302, 308, this court stated as follows:
 {¶ 29} "It is axiomatic that '* * * when a student enrolls in a college or university, pays his or her tuition and fees, and attends such school, the resulting relationship may reasonably be construed as being contractual in nature.' Behrend v. State (1977), 55 Ohio App.2d 135 139 * * *. In addressing the issue of whether such contract has been breached, the trier of fact appropriately looks to the terms of the contract as found in the college guidelines supplied to students. See Embrey v. Central State Univ. (Oct. 8, 1991), Franklin App. No. 90AP-1302 * * *. However, where the contract permits, the parties may alter its terms by mutual agreement, and any additional terms will supersede the original terms to the extent the two are contradictory. Ottery v. Bland (1987),42 Ohio App.3d 85, 87 * * *. In interpreting the contract, the trial court was required to '* * * attempt to harmonize all the provisions rather than produce conflict in them. * * *' Ottery, supra, at 87 * * *."
 {¶ 30} At the trial on liability, Suzanne Fitzgerald testified. Fitzgerald is the Dean of the East Liverpool campus of KSU and stated that the 1994-1995 handbook applied to appellee the entire time she was enrolled. Once a student failed or withdrew from a course, she was considered out of the nursing program and needed permission from the DON to retake a course, which was considered a readmission to the program. The DON was the only one who had discretion to allow a student to be readmitted to the program and, if a student was readmitted, she was readmitted to the nursing program, not just one class. Fitzgerald also stated that appellee was back in the program in the summer of 1997 when she was retaking Maternal/Newborn Developmental Self-Care.
 {¶ 31} Dr. Joyce Heise was the DON from 1990 through mid-June 1997. She testified that, to register for nursing core courses, a student needed the permission of the DON. Heise stated that students could apply for readmission to the program one time only, but the DON had the discretion to consider a student for readmission more than once. Heise stated that she signed appellee's preadmission form for Maternal/Newborn Developmental Self-Care during the summer of 1997 but did not know at that time that appellee also failed Nursing Agency III; however, Heise admitted that she did not readmit appellee for just one class but did readmit her into the nursing program.
 {¶ 32} Appellee testified that she scheduled an appointment with Heise as soon as she discovered that she failed Maternal/Newborn Developmental Self-Care. Her appointment was approximately one week later and Heise signed her preadmission form for Maternal/Newborn Developmental Self-Care and suggested that appellee audit Nursing Agency II during the fall of 1997 to prepare for retaking Nursing Agency III in the spring of 1998. Appellee did not know that she was out of the nursing program until November 1997.
 {¶ 33} The trial court found that, based on the greater weight of the evidence, Heise readmitted appellee into the entire nursing program in the summer of 1997. Since Heise allowed appellee to take the Maternal/Newborn Developmental Self-Care in the summer, she intended to allow appellee to register for the Nursing Agency III course in the spring in order that appellee could complete her degree. The court found it was not reasonable to have permitted appellee to take one course and not the other course. The trial court also found that appellee's assertion that Heise had advised her to audit Nursing Agency II in the fall before retaking Nursing Agency III in the spring was credible. Thus, the trial court found that Dr. Vitale's decision to remove appellee from the nursing program after she had been readmitted by Heise was arbitrary and capricious.
 {¶ 34} Although the DON did not know that appellee had failed Nursing Agency III at the time she readmitted appellee into the program, it is clear that appellee was readmitted into the program, not just into the Maternal/Newborn Developmental Self-Care course. By the time appellee started her summer Maternal/Newborn Developmental Self-Care course, the DON should have been aware that appellee had also failed Nursing Agency III because the grades for that class were released one or two weeks after the final exam was given. The DON had repeatedly readmitted appellee and Heise testified that she did not readmit for one class but readmitted students into the program. Fitzgerald testified that, if readmitted for one class, a student was readmitted into the program and Fitzgerald also admitted that appellee was back into the program in the summer of 1997.
 {¶ 35} Testimony at trial demonstrates that the trial court's judgment is supported by competent, credible evidence going to all the essential elements of the case. KSU breached its contract with appellee by dismissing her from the associate nursing degree program. KSU's first assignment of error is not well taken.
 {¶ 36} By the second assignment of error, KSU contends that the Court of Claims erred in refusing to leave the record open to allow KSU to supplement the record with the testimony of Dr. Connie Vitale. On January 10, 2001, KSU filed a motion to leave the record open so that it could supplement the record with the deposition testimony of Dr. Connie Vitale, the DON from June 1997 until 1999. KSU renewed its motion at trial. At the time of trial, Vitale was no longer employed by KSU and was living in another state, thus beyond the subpoena power of the court. KSU did not want to depose Vitale until after appellee had presented her case-in-chief. The trial court denied the motions. KSU argues that leaving the record open would not have significantly or unreasonably delayed the proceedings and that the trial court abused its discretion in refusing to allow KSU to supplement the record.
 {¶ 37} The trial court has broad discretion in the admission or exclusion of evidence and, in the absence of an abuse of discretion which results in material prejudice to a defendant, an appellate court should be slow to reverse evidentiary rulings. Krischbaum v. Dillon (1991),58 Ohio St.3d 58, 66. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 38} KSU made a conscious choice to wait until after appellee had presented her case-in-chief before deposing Vitale; however, the trial court was not required to delay the proceedings to allow KSU to supplement the record. It was not an abuse of discretion to do so. KSU's second assignment of error is not well-taken.
 {¶ 39} By the third assignment of error, KSU contends that the Court of Claims erred as a matter of law in finding that the DON had the authority to readmit appellee to the program in the absence of extenuating circumstances. As provided above, paragraph 14 of the Student Handbook provides that the DON has the discretion to consider a student for readmission where there are extenuating circumstances. Appellee testified that she did not remember telling Heise any extenuating circumstances as to why she failed. Heise did not remember any specific conversations with appellee, but stated that she would not have readmitted appellee without any extenuating circumstances. The trial court was entitled to believe that Heise would not have admitted appellee without extenuating circumstances and was not required to believe appellee. Such determinations of credibility and the weight to be given to the evidence are for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. KSU's third assignment of error is not well taken.
 {¶ 40} By the fourth assignment of error, KSU contends that the Court of Claims erred as a matter of law in holding that the decision of Dr. Vitale was arbitrary and capricious. KSU argues that the trial court was "required to defer to academic decisions of the college unless it perceived '* * * such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.' " Bleicher, at 308, quoting Regents of the Univ. of Mich. v. Ewing (1985), 474 U.S. 214, 225. In this case, the trial court found that Dr. Vitale's decision was arbitrary and capricious. The standard of review is not merely whether the court would have decided the matter differently but, rather, whether the faculty action was arbitrary and capricious. Bleicher, at 308, citing Bd. of Curators of Univ. of Mo. v. Horowitz (1978), 435 U.S. 78, 91.
 {¶ 41} As addressed above in the first assignment of error, the trial testimony supports the trial court's judgment that KSU breached its contract with appellee by dismissing her from the associate nursing degree program and that the decision to dismiss her from the program was arbitrary and capricious. There was sufficient testimony that the DON had readmitted appellee into the program not just into her Maternal/Newborn Developmental Self-Care class and the refusal to permit her to retake Nursing Agency III in the spring of 1998 was an arbitrary and capricious decision. KSU's fourth assignment of error is not well taken.
 {¶ 42} The fifth and sixth assignments of error are related and shall be addressed together. By the fifth assignment of error, KSU contends that the Court of Claims erred in the calculation of appellee's damages. By the sixth assignment of error, KSU contends that the Court of Claims erred in not finding that appellee failed to mitigate her damages.
 {¶ 43} The trial court found that appellee had obtained $14,531 as loans to pay for educational expenses; however, there was evidence that appellee received $12,446 in grants which resulted in refunds to her in the amount of $11,230.08, and the court found such grants constituted a collateral source pursuant to R.C. 2743.02(D). The trial court then awarded appellee $14,531 as damages which included appellee's filing fee and denied attorney fees. KSU argues that appellee was only entitled to $198 which is the amount appellee paid for the summer Maternal/Newborn Developmental Self-Care class.
 {¶ 44} In The Toledo Group, Inc. v. Benton Industries, Inc. (1993), 87 Ohio App.3d 798, 806, the court stated that "[d]amages for a breach of contract are those which are the natural or probable consequence of the breach of contract or damages resulting from the breach that were within the contemplation of both parties at the time of the making of the contract." In giving an award of money damages in a breach of contract action, the intent is to place the injured party in the same position it would have been in had the contract not been breached. Schulke Radio Productions, Ltd. v. Midwestern Broadcasting Co. (1983), 6 Ohio St.3d 436, 439. On appeal, a court may reverse a damage award if it is manifestly against the weight of the evidence and not supported by sufficient evidence. Schendel v. Bradford (1922),106 Ohio St. 387, 394.
 {¶ 45} KSU argues that appellee is only entitled to receive as damages the amount she incurred in reliance upon the promise she claims was made to her, that is, she could retake Nursing Agency III, thus, KSU argues appellee is limited to $198 in damages for tuition for her summer Maternal/Newborn Developmental Self-Care class. The Court of Claims found that, in order to place appellee in the same position she would have been in had the contract not been breached, a refund of the amount paid as student loans was necessary. Plaintiff's Exhibit 21 identifies $14,531 in student loans that appellee paid in full by refinancing her home in December 1998, but Defendant's Exhibit M only identifies $12,702 in student loans from KSU and only $10,080 while appellee was enrolled in the associate degree nursing program. There is no identification on Plaintiff's Exhibit 21 that the loans that were paid were incurred by appellee during the time she was enrolled in the associate degree nursing program at KSU. Thus, appellee should have received $10,080 in damages plus her filing fee. The grants she received totaled $12,446, which resulted in refunds to her in the amount of $11,230.08, which constitute a collateral source pursuant to R.C. 2743.02(D). Thus, appellee is entitled to no monetary damages and KSU's fifth assignment of error is well taken in part. KSU's sixth assignment of error is moot.
 {¶ 46} For the foregoing reasons, KSU's first, second, third and fourth assignments of error are overruled, the fifth assignment of error is sustained in part and overruled in part and the sixth assignment of error is overruled as moot. The judgment of the Court of Claims is affirmed in part and reversed in part, and this cause is remanded to that court for further proceedings in accordance with law and consistent with this opinion.
Judgment affirmed in part, reversed in part and cause remanded.
BRYANT and TYACK, JJ., concur.