859 F.2d 152
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Robert H. EBIE, Plaintiff-Appellant,
v.
TELEDYNE INDUSTRIES, INC., Defendant-Appellee.
 No. 87-3852.
 United States Court of Appeals, Sixth Circuit.
 Sept. 21, 1988.
 
 Before MILBURN and BOGGS, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 On November 4, 1982, an Ohio division of Teledyne Industries, Inc. ("Teledyne") discharged Robert Ebie for refusing to sign a "Confidential Information Agreement" which prohibited the disclosure of company secrets and assigned ownership of the signer's inventive ideas to Teledyne. Ebie sued, claiming that his employment agreement with Teledyne had an implied term that he could be fired only for "just cause" and that no such finding has been made. He also claimed intentional infliction of emotional distress and a breach of the covenant of good faith and fair dealing, all arising from his discharge.
 
 
 2
 The district court granted Teledyne's motion for summary judgment on all claims, finding that the employment agreement between Ebie and Teledyne was an "at will" agreement and Ebie could be fired without just cause. In addition, the court found that there was no claim for emotional distress because Teledyne's conduct was not "outrageous"; and the covenant of good faith and fair dealing was not breached because there is no covenant without an underlying contractual basis which was absent here.
 
 
 3
 On appeal, Ebie contends that the district court erred in each of these conclusions, again alleging that Teledyne discharged him without the requisite just cause, and that this discharge caused him great emotional distress and breached an implied covenant of good faith and fair dealing common to all contracts.
 
 
 4
 We agree with the district court that the employment agreement between Ebie and Teledyne was an "at will" agreement, and, thus, Teledyne was not liable for discharging Ebie without a finding of just cause. We also agree with the other rulings of the district court and we affirm.
 
 
 5
 * Ebie was employed by Teledyne in 1967. Teledyne manufactures tires, bushings and metal stampings, employing 1200 people in four plants in Ohio. Teledyne admits that its custom and practice is to discharge only for just cause; however, it contends that it has no written or otherwise explicit policy that was intended to, or would lead an employee to, regard this practice as an implied term of the employment agreement.
 
 
 6
 Although Ohio is still an "at will" state, it recognizes exceptions to that rule. Ebie presents a number of facts to support his contention that the employment agreement comes within an exception. First, the employment application he filled out before he was hired said that false statements on the application would be cause for discharge. Ebie claims that this statement would be meaningless if the employment agreement were an "at will" contract. Second, the union agreement said that discharge would be only for cause. Although Ebie became a non-union employee when he was promoted after working for Teledyne for a number of years, he claims that he was given a copy of the union agreement by Teledyne when he was hired, that this agreement is given to all union and non-union employees, and that the agreement uses the term "all employees" only when discussing the terms for discharge. Third, the employee handbook emphasizes good work performance; Ebie claims that this implies that an employee will be able to continue working unless the employee's performance is not good. However, the handbook contains a disclaimer which states that the handbook is not to be relied on as the source of company policy. Fourth, Ebie claims that, during his interview for his promotion, his supervisor told him that, if he did his work, he would always have a job. Fifth, there was a posted "Policy of Fairness" (1985) which states that all employees will be treated fairly, including upon discharge, which Ebie claims implies that employees will only be fired for cause.
 
 
 7
 Some time before 1982, an employee was fired for disclosing company secrets. Teledyne decided, in 1982, to have all non-union employees sign the "Confidential Information Agreement" which Ebie refused to sign and which led to his discharge. Teledyne's personnel manager repeatedly told Ebie that signing the agreement was a condition of employment and that he would be fired if he did not sign it. Ebie persisted, and was discharged on November 4, 1982.
 
 II
 
 8
 Summary judgment is appropriate when the moving party shows that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).
 
 
 9
 This is a diversity action under 28 U.S.C. Sec. 1332. This court must apply the substantive law of the state in which the action originated. Erie R.R. v. Tompkins, 304 U.S. 64 (1938). Thus, we must apply Ohio law in determining the outcome in this case.
 
 
 10
 The leading case in Ohio on interpreting the discharge provisions of an express or implied contract is Mers v. Dispatch Printing Co., 483 N.E.2d 150 (Ohio 1985). There, the Supreme Court of Ohio held that the presumption in Ohio remains that all contracts for employment can be terminated by either party at will, with limited exceptions. The test for determining the discharge terms of an oral contract is:
 
 
 11
 A priori, the facts and circumstances surrounding an oral employment-at-will agreement, including the character of the employment, custom, the course of dealing between the parties, company policy, or any other fact which may illuminate the question, can be considered by the trier of fact in order to determine the agreement's explicit and implicit terms concerning discharge.
 
 
 12
 Id. at 154. Additionally,
 
 
 13
 [W]here appropriate, the doctrine of promissory estoppel is applicable and binding to oral employment-at-will agreements when a promise which the employer should reasonably expect to induce action or forebearance on the part of the employee does induce such action or forebearance, if injustice can be avoided only by enforcement of the promise.
 
 
 14
 Id. at 155. In other words, to maintain a claim of promissory estoppel, the employee "must be justified 'in understanding that a commitment has been made.' " Bolling v. Clevepak Corp., 484 N.E.2d 1367, 1373 (Ohio App.1984) (quoting Helle v. Landmark, Inc., 472 N.E.2d 765 (Ohio App.1984)); Phung v. Waste Management, Inc., 491 N.E.2d 1114 (Ohio 1986). Contra, Toussaint v. Blue Cross and Blue Shield, 292 N.W.2d 880 (Mich.1980) (Michigan abandons the at-will presumption).
 
 
 15
 In addition, although some Ohio authority indicates that handbooks, employee manuals and the like can provide evidence of the existence of a contract to rebut the at will presumption "if the necessary elements reasonably appear from the facts ...," Bolling, 484 N.E.2d at 1374, the weight of recent authority is to the contrary. Harknett v. The Smithers Co., No. 12974 (Summit App. August 19, 1987) (handbook not a basis for justifiable reliance); Czerkas v. United States Steel Corp., No. 3823 (Lorain App. Nov. 13, 1985) (internal booklets are not a contract, and reliance thereon is not justified).[1]
 
 
 16
 Thus, based on either the theory of implied contract or of promissory estoppel, an Ohio court could find an exception to the "at will" presumption. Seymour v. ITT Corp., No. 3-87-4 (Crawford App. June 2, 1988). In general, the "[at will] presumption may be rebutted with evidence that the terms of the employment contract manifest the parties' intention to bind each other for a specified term." Boundy v. Arnold Haviland Co., 514 N.E.2d 931, 933 (Ohio App.1986). However, " 'plaintiff's subjective expectation does not create an enforceable contract right.' " Dell v. Montgomery Ward and Co., Inc., 811 F.2d 970 (6th Cir.1987) (quoting Sepanske v. Bendix Corp., 384 N.W.2d 54 (Mich.App.1985)); Arthur v. Honda of America Mfg., Inc., No. 14-86-14 (Union App. Sept. 18, 1987). Thus, the crucial issue in this case is whether the parties intended to modify their agreement by including a just cause requirement.
 
 
 17
 We agree with the district court that there is no material issue of fact regarding the intent of the parties to this employment agreement. Ebie simply has not presented facts sufficient to show that he and Teledyne intended to modify the "at will" presumption and create a just cause requirement. The handbook contained a disclaimer specifically guarding against the possibility of reliance on it by employees; the union agreement does not apply to Ebie as a non-union employee; the job application is fairly insignificant as evidence of intent to bind the parties in that it merely mentions one cause that will definitely lead to termination; the posted fairness policy is insufficient in that a promise of fairness is vague and not equivalent to a just cause requirement; and there is no corroboration for Ebie's assertion that his supervisor made any promise that was intended to bind Teledyne. Thus, there has been no showing by Ebie that both he and Teledyne intended to modify the employment agreement to include a just cause requirement, and the trial court correctly granted summary judgment to Teledyne.
 
 
 18
 We also agree with the trial court's determination that Ebie's other claims must fail. The two leading Ohio cases on emotional distress are Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of America, et al., 453 N.E.2d 666, 671 (Ohio 1983), where the Ohio Supreme Court held that the emotional distress alleged must be serious, though no accompanying physical injury is required, and Pyle v. Pyle, 463 N.E.2d 98 (Ohio App.1983), where the Ohio Court of Appeals for Cuyahoga County fashioned a four-part test for evaluating a claim of emotional distress:
 
 
 19
 1. that the actor either intended to cause emotional distress or knew or should have known that the actions taken would result in serious emotional distress to the plaintiff;
 
 
 20
 2. that the actor's conduct was so extreme and outrageous as to go "beyond all possible bounds of decency" ...;
 
 
 21
 3. that the actor's actions were the proximate cause of the plaintiff's psychic injury; and
 
 
 22
 4. that the mental anguish suffered by plaintiff is serious....
 
 
 23
 Id. at 103 (citations omitted).
 
 
 24
 The trial judge found that the conduct of the defendant was not so "extreme and outrageous" as to meet these requirements. We agree. An employer who requires compliance with customary company policy as a condition of employment is within his rights as an employer.
 
 
 25
 Finally, the trial court was correct in granting summary judgment on the claim of breach of the covenant of good faith and fair dealing. This issue can be resolved rather simply. In Bolling v. Clevepak Corp., 484 N.E.2d 1367 (Ohio App.1984), the Ohio Court of Appeals recognized that "parties to an employment contract, as with any other contract, are bound toward one another by standards of good faith and fair-dealing." Id. at 1376. However, the court referred to this duty as a "salutary rule[ ] of construction," not as a basis for a cause of action. Ibid. Thus, such a covenant means only that, when a contract is susceptible to a fraudulent interpretation as well as an honest one, the latter should be presumed. Ibid. Thus, the covenant can play no role in this case, and the trial judge should be affirmed.
 
 III
 
 26
 The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 The Ohio Supreme Court, in its Rules for Reporting Opinions, has stated that unpublished opinions have persuasive value only, and are not controlling. Ohio Rep.Rule 2(G). Thus, we cite unpublished opinions as persuasive authority only, as indicia of recent trends in the Ohio courts