**THOMASVILLE FURNITURE INDUSTRIES, INC., Plaintiff–Appellee,**

v.

**JGR, INC., Defendant–Appellant.**

**Nos. 99–4480, 99–4481.**

United States Court of Appeals, Sixth Circuit.

Feb. 7, 2001.

Before NORRIS and CLAY, Circuit Judges; ROSEN, District Judge.*

CLAY, Circuit Judge.

Defendant, JGR, Inc., appeals from the district court orders dismissing Defendant's motion for reconsideration and granting summary judgment in favor of Plaintiff, Thomasville Furniture Industries, Inc., in this diversity of citizenship action brought pursuant to 28 U.S.C. § 1332(a)(1) seeking payment for furniture and services which Defendant purchased from Plaintiff. For the reasons set forth below, we REVERSE the district court's award of summary judgment and REMAND for further proceedings.

## BACKGROUND

### Procedural Background

On July 1, 1996, Plaintiff, a Delaware corporation with its principal place of business in North Carolina, filed a complaint against Defendant, an Ohio corporation, in the district court, pursuant to diversity jurisdiction under 28 U.S.C. § 1332(a)(1), to collect over $650,000 for furniture and service charges owed to Plaintiff. In response, Defendant filed a separate claim against Plaintiff in Ohio state court, alleging that Plaintiff's breach of contract and fraudulent misrepresentation caused Defendant to go out of business. Plaintiff, as cross-defendant, removed the case to U.S. District Court. Plaintiff also filed a motion for summary judgment in the district court, asserting that no genuine issue of material fact existed as to either Defendant's breach of oral contract or fraudulent misrepresentation claims because both claims were barred by the Ohio statute of frauds. Defendant, in its response to the

* The Honorable Gerald E. Rosen, United States District Judge for the Eastern District of Michigan, sitting by designation.

summary judgment motion, argued that even if the Ohio statute of frauds barred those claims, Plaintiff's conduct also violated the implied covenant of good faith and fair dealing arising out of the parties' contractual relationship which was beyond the reach of the Ohio statute of frauds.

On September 7, 1999, the district court granted Plaintiff's motion for summary judgment, finding that (i) the Ohio statute of frauds barred Defendant's breach of oral contract claim; (ii) Defendant had waived its fraudulent misrepresentation claim; and (iii) Defendant had not raised a genuine issue of material fact as to its implied covenant of good faith and fair dealing claim because the claim was based on a non-existent oral contract. Defendant then filed a motion for reconsideration, arguing that the district court had misinterpreted the implied covenant of good faith and fair dealing claim to be based on an oral, rather than written, contract with Plaintiff. The district court denied Defendant's motion on November 15, 1999, finding that Defendant had not articulated how the written contract at issue created an implied duty which barred Plaintiff from engaging in competitive business practices, and ordered Defendant to pay Plaintiff over $850,000.00 in damages. Defendant appeals from the district court's denial of its motion for reconsideration of the court's grant of summary judgment, pursuant to 28 U.S.C. § 1291 and § 1294.

## Factual Background

In March of 1988, Gerald Yosowitz resigned as President of Furniture Land, Inc., a company which then operated nine furniture stores in northeastern Ohio. Yosowitz then sought out a business in the area to purchase, own, and operate. According to Yosowitz, it soon appeared that Mike Baker, the principal owner of Furniture Land, was attempting to thwart Yosowitz's efforts to establish a business so that Yosowitz would return to Furniture Land. In January of 1990, Yosowitz formed JGR, Inc., a furniture retailer. Yosowitz remained convinced that Baker wanted to see him fail in his new endeavor. In April of 1990, Yosowitz, as Defendant JGR, went to a major furniture exposition in North Carolina to acquire a primary line of furniture. Defendant was determined to contract with a manufacturer who did not do business with Furniture Land, in order to avoid Baker's influence. When Defendant heard that Plaintiff had broken off negotiations with Furniture Land, Defendant entered into negotiations with Plaintiff.

Defendant informed Plaintiff that he would not do business if Plaintiff still considered supplying Furniture Land with merchandise. Defendant requested assurances from Plaintiff that negotiations with Furniture Land had indeed ceased, so as to prevent the two stores from selling the same furniture line. Defendant received oral assurances from Plaintiff that it would not sell to Furniture Land, or to Baker's, an alter ego of Furniture Land that was in development at the time. On May 6, 1990, Defendant and Plaintiff signed a written agreement (the "1990 Agreement") establishing Defendant as a "Thomasville Gallery" retailer, but never reduced Plaintiff's oral assurances of no future dealings with Furniture Land or Baker's to writing. The 1990 Agreement provided, in relevant part, as follows:

Thomasville will grant retailers designated as Thomasville Galleries the non-exclusive right to use the trademarks "Thomasville" and "Thomasville Gallery"....

That right will exist only so long as the Gallery designation is applicable, and so long as the use of the trademarks is

compatible with the Thomasville quality image....

The "Thomasville Gallery" designation may be withdrawn by Thomasville or retailer at any time.

(J.A. at 62).

On September 15, 1990, Defendant opened its first store, named Gerald's. A large percentage of Gerald's stock was Thomasville furniture. In its advertising campaign, Defendant heavily emphasized that its store was a Thomasville Gallery. Subsequently, the Thomasville brand became associated with Gerald's, and initial business was good.

In February of 1991, a Thomasville marketing representative informed Defendant that Plaintiff had reentered negotiations with Furniture Land. Defendant reminded Plaintiff of Plaintiff's oral assurance not to sell to Furniture Land or Baker's. Plaintiff responded that they were "just talking" with Furniture Land, and for the next year did not give Defendant a definite answer on whether Plaintiff would ultimately sell to Furniture Land. Defendant was convinced that if Furniture Land began to sell Thomasville products, Furniture Land would undercut Gerald's and drive Defendant out of business. Defendant considered dropping the Thomasville line, but decided that Gerald's had become so associated with the brand that switching product lines would be financially disastrous. Nevertheless, because Gerald's employees were aware of the uncertainty, they began to steer customers away from Thomasville products, and sales dropped.

In April of 1992, Plaintiff asked Defendant to sign a new Thomasville Gallery agreement, which raised the minimum gallery space requirement for Thomasville furniture from 6,000 to 7,500 square feet (the "1992 Agreement"). Existing Thomasville Gallery retailers were also informed, in an accompanying letter sent by Thomasville's Executive Vice President, Dan Grow, that they would be given until January 1, 1993 to comply with the new 7,500 square footage requirements, and that any new Thomasville Gallery retailers would also have to comply with the new requirements (the "1992 Letter").

Defendant signed the request for designation form of the 1992 Agreement, but inserted an asterisk next to his signature, with a handwritten instruction to "see back for clarification of signature". (J.A. at 64). On the back of the agreement, Defendant handwrote the following:

> I sign this agreement under the condition that all other Thomasville dealers in my marketing area are held to the same conditions.... If I correctly understand the letter from Dan Grow (dated 3/10/92) which spells out Thomasville[']s new guidelines (including square footage requirements) [,] all Thomasville dealers existing or new will be held to the same requirements.

(J.A. at 65). On August 4, 1992, Thomasville Vice President William E. Carrico responded to Defendant's understanding of the agreement as indicated by Defendant's "clarification of signature":

> I am returning the copy of your Request for Designation as a "Thomasville Gallery" Retailer. You have some notes on the back listing some concerns. As you know, Cleveland is in a period of transition so it makes sense to let matters settle out. We will review the matter by July 1, 1993.

(J.A. at 264)

In October of 1992, Plaintiff informed Defendant that Furniture Land, soon to be "Baker's", would be carrying the Thomasville line in its stores, and that Baker's, at least initially, would not be required to meet Plaintiff's gallery space requirements.

As Defendant had anticipated, Baker's sold their Thomasville products at a lower price than Gerald's. Moreover, one Baker's store, located across the street from Gerald's, did not display Thomasville products, but rather, Defendant alleges, sent customers across the street to examine Gerald's displays, promising to sell the customers the same furniture for less, regardless of what price Gerald's quoted them. In November of 1992, citing concern for Gerald's "continued viability" in light of the Baker's opening across the street, Plaintiff notified Defendant that no orders from Gerald's would be processed or shipped without prepayment. (J.A. at 178.) Defendant closed Gerald's on October 4, 1993. When Gerald's closed, Defendant had not paid Plaintiff for over $500,000 worth of furniture.

## DISCUSSION

### Standard of Review

■ Federal law governs our standard of review in diversity cases. *See Gafford v. General Elec. Co.*, 997 F.2d 150, 166 (6th Cir.1993). When the district court rejects a motion that seeks reconsideration of a grant of summary judgment, this Court reviews the district court's legal determination *de novo. Columbia Gas Transmission Corp. v. Limited Corp.*, 951 F.2d 110, 112 (6th Cir.1991). Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). If Defendant, as the nonmoving party, presents evidence from which a jury might return a verdict in its favor, summary judgment may not be granted. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In

considering Plaintiff's motion for summary judgment, this Court accepts Defendant's evidence as true and draws all reasonable inferences in its favor. *Id.* The federal court, sitting in diversity, applies the same law as would be applied by the Ohio state courts. *See Hisrich v. Volvo Cars of North America*, 226 F.3d 445, 449 (6th Cir.2000).

### Analysis

Defendant argues that the district court misinterpreted its claim of an implied covenant of good faith and fair dealing as arising from its oral, rather than written, contract with Plaintiff, and thus erred when concluding that there could be no requirement of good faith and fair dealing with respect to a non-existent contract. The district court had found the oral agreement between Defendant and Plaintiff to be a non-existent contract because the oral agreement was barred by the Ohio statute of frauds. Defendant argues in response that its implied covenant of good faith claim arises from its existing, written contract with Plaintiff, and that Ohio law provides for a contractual right of action arising from a breach of an implied covenant of good faith and fair dealing based on the terms of an existing written agreement.

Defendant cites *McLemore v. McLemore*, No. 13802, 1994 WL 579866 at*2 (Ohio App. Oct. 19, 1994) an unpublished Ohio case, in support of its position. In *McLemore*, the court stated:

Parties to any contract are bound toward one another by standards of good faith and fair dealing. *Bolling v. Clevepak Corp.* . (1984), 20 Ohio App.3d 113, 121, 484 N.E.2d 1367. A party cannot discharge his duty under a contract by the occurrence of an event which is the result of a breach of his own duty of good faith and fair dealing. Restate-

ment of the Law 2d, Contracts (1981) 189, Section 230. As such, implied in every contract is a condition that neither party will act so as to defeat the other party's legitimate expectations under the contract.

Defendant argues that in addition to Ohio case law and the Restatement (2d) of Contracts, Ohio's adoption of U.C.C. 1–203 in R.C. § 1301.09 provides further support for a right of action pursuant to an implied covenant of good faith and fair dealing: "Every contract or duty within Chapters 1301, 1302, 1303, 1304, 1305, 1307, 1308, 1309, and 1310 of the Revised Code imposes an obligation of good faith in its performance or enforcement."

The *McLemore* court relied on *Bolling* for the claim that parties to any contract are bound toward one another by standards of good faith and fair dealing. However, the *Bolling* court referred to the implied covenant of good faith and fair dealing as a "salutary rule of construction," not as a basis for a cause of action. *Bolling v. Clevepak Corp.*, 20 Ohio App.3d 113, 484 N.E.2d 1367, 1376 (1984). The *Bolling* court stated, "where two constructions are possible, one of which requires a finding of fraudulent intent, and the other permits a conclusion of good faith, courts never hesitate in giving effect to the latter interpretation." *Id.* (quoting *Sigman v. Rudolph Wurlitzer Co.* 57 Ohio App. 4, 11 N.E.2d 878 (Ohio 1937)).

■ This Court has held that, under *Bolling*, the implied covenant of good faith and fair dealing "means only that ... when a contract is susceptible to a fraudulent interpretation as well as an honest one, the latter should be presumed", and that the covenant is not an independent basis for a cause of action. *Ebie v. Teledyne Industries, Inc.*, No. 87–3852, 1988 WL 98366 at *4 (6th Cir. Sept. 21, 1988).

While *Ebie* is an unpublished opinion, this Court has confirmed *Ebie's* understanding of the implied covenant of good faith and fair dealing in a published opinion as well: "[T]he implied covenant of good faith is a construction aid that helps a court determine the intent of the parties; it cannot be used to add terms to the contract when there is no evidence that the parties intended that those terms be included." *Metro Communications Comp. v. Ameritech Mobile Communications*, 984 F.2d 739, 743 (6th Cir.1993).

The Ohio courts' interpretation of *Bolling* is consistent with this Court. In *Lakota Local School District v. Brickner*, 108 Ohio App.3d 637, 671 N.E.2d 578, 584 (1996), the Ohio Court of Appeals found that *Bolling* did not stand "for the proposition that a breach of contract of good faith exists as a separate cause of action from a breach of contract claim. Instead, [*Bolling*] recognize[s] the fact that good faith is part of a contract claim and does not stand alone."

■ However, Defendant's implied covenant of good faith and fair dealing claim as to the 1992 Agreement is not inconsistent with Ohio law. Defendant has argued that its implied covenant claim arises out of its written agreement with Plaintiff. Defendant's response to Plaintiff's motion for summary judgment, which Defendant also quoted in its motion for reconsideration, stated the following:

[Plaintiff's] conduct in giving Baker's full access to [Plaintiff's] products without requiring Baker's Mentor store to construct a 7,500 square foot gallery ... notwithstanding [Defendant's] repeated insistence that all Thomasville dealers be placed on an "even playing field," clearly violated the implied covenant of good faith and fair dealing that was part of their contractual relationship.

(J.A. at 245.) Defendant need not rely on the implied covenant of good faith and fair dealing as an independent cause of action because Defendant has argued that the implied covenant arises out of Plaintiff's written assurance on square footage requirements which formed part of their written contract.

Neither Plaintiff's motion for summary judgment, nor the district court's consideration of that motion, addressed the breach of written contract component of Defendant's claim. Count one of Defendant's complaint [1] alleged the following:

> In order to induce [Defendant] to enter into and accept the [1992 Agreement], [Plaintiff] contracted and agreed that it would require all vendors of Thomasville products in the [Defendant's] marketing area to comply with the same terms, conditions and requirements as the [Defendant]. A copy of said Agreement is attached hereto and incorporated herein as Exhibit "D".

(J.A. at 56–57.) Defendant's Exhibit D was the 1992 Letter. Defendant then alleged that Plaintiff had breached this contract.

Despite Defendant's breach of written contract claim, Plaintiff's motion for summary judgment argued that:

> no genuine issue of material fact exists with respect to [Defendant's] breach of oral contract/intentional misrepresentation claims against [Plaintiff]. Therefore, [Plaintiff] is entitled to summary judgment on all counts of [Plaintiff's] Complaint.

(J.A. at 81.) The district court then found that because "this Court has already determined that the oral agreement is not an enforceable contract, there can be no requirement of good faith and fair dealing with respect to a non-existent contract." (J.A. at 240 .) Thus, the district court concluded, Defendant's implied covenant of good faith and fair dealing claim did not raise a genuine issue of fact. Neither Plaintiff's summary judgment motion, nor the district court decision, considered whether a genuine issue of material fact existed as to the scope of the written contract.

■ Whether a given document is part of a written contract is a question of fact. *See Greenberg v. The Life Insurance Company of Virginia,* 177 F.3d 507, 516 (6th Cir.1999)(application form as part of insurance contract an uncontested fact); *Davidson & Jones Dev. Co. v. Elmore Dev. Co.,* 921 F.2d 1343, (6th Cir.1991)(whether personal guaranty requirements in loan commitment letter were part of loan agreement a question of fact precluding grant of summary judgment).

■ We find that a question of fact exists as to whether the parties intended the 1992 Letter to form part of the 1992 Agreement. Defendant clearly communicated his understanding that the 1992 Letter was to be included as a part of the 1992 Agreement, not only by referencing the Letter in his clarification of signature to the 1992 Agreement, but also by specifically reiterating in his clarification the 1992 Letter's assurances on uniform square footage requirements.

Defendant also presented evidence of Plaintiff's internal discussions in the months following Defendant's request for clarification of the 1992 Agreement. A memorandum prepared by Bill Matzorkis, a marketing representative for Plaintiff, and submitted to Thomasville manage-

---

**1.** Defendant was "Plaintiff" for purposes of the state court complaint, which was filed in response to Plaintiff's federal diversity action against Defendant. We refer to JGR as "Defendant" throughout this opinion for consistency.

ment, stated, "We need to continue to assure [Defendant] that he is on equal ground with whatever his competition, specifically Bakers, is getting from us." (J.A. at 163 .)

Further, Plaintiff's arguable delay in responding to Defendant's clarification of signature only adds uncertainty to the factual question by creating the possibility that Defendant's clarification of signature became part of the 1992 Agreement under Section 1302.10(A) of the Ohio Revised Code, Ohio's codification of Uniform Commercial Code § 2–207. Plaintiff states that Defendant signed the 1992 Agreement in March of 1992. However, Plaintiff did not respond to Defendant's clarification of signature until August of 1992, which in turn put off a final decision until July of 1993. Section 1302.10, which applies to sales of goods between merchants, provides that terms added to an acceptance will become part of the contract if the terms do not materially alter the contract and notification of objection to the added terms is not given within a reasonable time after receiving notice of the added terms.

■ The 1992 Letter's assurance by Plaintiff to hold all Thomasville Gallery retailers to the same square footage requirements is not in tension with the provisions of the 1992 Agreement. The 1992 Agreement clearly included non-exclusivity and at-will provisions, ensuring Thomasville's right to enter into similar agreements with Furniture Land or Baker's, as well as Thomasville's right to abandon its relationship with Defendant. However, the 1992 Agreement was not clear on Thomasville's right to offer dramatically different terms to different Thomasville Galleries. Thus, one limitation of Ohio contract law, that where there is a clear and unambiguous contract there is no question of fact to be determined, does not apply. *See Inland Refuse Transfer Co. v.*

*Browning–Ferris Indus. of Ohio,* 15 Ohio St.3d 321, 474 N.E.2d 271, 272–73 (1984)(per curiam). Moreover, because the assurances of the 1992 Letter would not contradict the provisions of the 1992 Agreement, otherwise applicable contract interpretation rules under Ohio law are not implicated. For example, including the 1992 Letter assurances would not raise difficult questions of added terms superceding original terms, the need to harmonize provisions, or the need to give effect to all provisions of a contract. *See Ottery v. Bland,* 42 Ohio App.3d 85, 536 N.E.2d 651, 654 (1987).

The 1992 Agreement, like the 1990 Agreement, did not include an integration clause. The presence of an integration clause in the 1992 Agreement would have strengthened Plaintiff's argument that the parties had entered into a single, integrated written contract the terms of which cannot be disputed by Defendant's references to external documents or negotiations.

This Court has commented on the rationale for including an integration clause:

> The purpose of an integration clause stating that there are no agreements or understandings between the parties other than those reflected in the written contract is . . . to prevent either party from relying upon statements or representations made during negotiations that were not included in the final agreement.

*Coal Resources, Inc. v. Gulf & Western Industries, Inc.,* 756 F.2d 443, 447 (6th Cir.1985).

The Ohio courts have also been instructive on this issue. "If contracting parties integrate their negotiations and promises into an unambiguous, final, written agreement, then evidence of . . . contemporaneous negotiations, understandings, prom-

ises, representations, or the like pertaining to the terms of the final agreement are generally excluded from consideration by the court." *Bollinger Inc. v. Mayerson,* 116 Ohio App.3d 702, 689 N.E.2d 62,68 (1996)(citing *Charles A. Burton, Inc. v. Durkee,* 158 Ohio St. 313, 109 N.E.2d 265 (1952)).

Ohio courts have explained the relationship between contract integration and application of the parol evidence rule: "[a] document that was agreed to by the parties as a complete and accurate integration of [a] contract is a prerequisite to application of the parol evidence rule." *National City Bank, Akron v. Donaldson,* 95 Ohio App.3d 241, 642 N.E.2d 58, 60 (1994) (citation and internal quotations omitted). The parol evidence rule states that a "final, written integration of [an] agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements." *See Galmish v. Cicchini,* 90 Ohio St.3d 22, 734 N.E.2d 782, 788 (2000)(quoting 11 WILLISTON ON CONTRACTS § 33:4 at 569–570 (4 ed.1999)).

Absent an integration clause, the determination of whether a written agreement is completely integrated is not perfunctory:

> [Whether] a writing was or was not adopted as a completely integrated agreement may be proved by any relevant evidence. A document in the form of a written contract, signed by both parties and apparently complete on its face, may be decisive of the issue in the absence of credible contrary evidence. But a writing cannot of itself prove its own completeness, and wide latitude must be allowed for inquiry into circumstances bearing on the intention of the parties.

(*National City Bank,* 95 Ohio App.3d at 246, 642 N.E.2d 58)(quoting RESTATEMENT (SECOND) OF CONTRACTS § 210, Comment b)(1981).

We find that Defendant's understanding of the parties' agreement as indicated by Defendant's "clarification of signature", Plaintiff's delayed response to such clarification, and the 1992 Agreement's lack of an integration clause, create a genuine issue of material fact as to whether the parties intended the 1992 Letter to form part of the 1992 Agreement. Accordingly, this factual issue precludes entry of summary judgment in favor of Plaintiff.

## CONCLUSION

For the reasons stated above, the district court's orders dismissing Defendant's motion for reconsideration and awarding summary judgment in favor of Plaintiff are REVERSED and the question of the scope of the written terms of the 1992 Agreement is REMANDED for further consideration.