NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0567n.06

No. 11-1549

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Jun 04, 2012*

LEONARD GREEN, Clerk

DETROIT PUBLIC SCHOOLS PROGRAM      )
MANAGEMENT TEAM and LEXINGTON       )
INSURANCE COMPANY,                  )
                                    )
     Plaintiffs-Appellants,         )
                                    )
v.                                  )  ON APPEAL FROM THE UNITED
                                    )  STATES DISTRICT COURT FOR THE
VALLEY FORGE INSURANCE              )  EASTERN DISTRICT OF MICHIGAN
COMPANY,                            )
                                    )
     Defendant-Appellee.            )

Before: MOORE, SUTTON and STRANCH, Circuit Judges.

SUTTON, Circuit Judge. This insurance-coverage case turns on a disputed fact: whether a document was part of a contract. After a bench trial, the district court concluded it was not. Because that factual finding is not clearly erroneous, we affirm.

I.

The Detroit Public Schools Program Management Team (the Management Team) is a limited-liability company, owned by six construction firms, that manages capital-improvement projects for the Detroit Public Schools. In November 2001, the Management Team arranged for the school district to sign a contract with Jenkins Construction to provide "pre-construction services" in connection with a project at Cass Technical High School. R.21-3 at 2. The following month,

Rick Beavers, a Jenkins employee working on the project, was injured when he fell off a loading dock at Cass Tech. In March 2003, he filed a tort suit in state court against three of the firms that owned the Management Team. The lawsuit prompted two insurance companies to enter the picture: Lexington and Valley Forge. Lexington, which issued a general liability policy to the Management Team, agreed to bear the cost of defending the suit, as the policy requires. Valley Forge, meanwhile, had also issued a policy to Jenkins Construction. The question is whether that policy requires Valley Forge to help bear the cost of defending Beavers's lawsuit.

The Management Team and Lexington say it does. They point to a clause in the Valley Forge policy adding as an insured "any person or organization . . . whom you are required to add as an additional insured on this policy under . . . a written contract or agreement" in effect at the time of the incident giving rise to liability. R.21-4 at 23. The "written contract or agreement" in question is the November 2001 agreement between Jenkins Construction and the Detroit Public Schools. R.21 at 4. It requires Jenkins to "provide insurance in accordance with [the] attached document marked Exhibit E." R.21-3 at 5. But there is no Exhibit E in the contract; the four attached exhibits are labeled A through D. Not to worry, say the Management Team and Lexington: that is a labeling error. They point to a separate document, titled "Exhibit H," which the parties meant to include in the contract and which requires the Detroit Public Schools and the Management Team to "be named as additional insureds" on a liability policy. R.21-16 ¶ 7. Exhibit H was attached to Jenkins's and the Management Team's copies of the contract.

For its part, Valley Forge insists the contract means what it says: any insurance requirement was to be contained in Exhibit E, not Exhibit H, the latter of which the contract never mentions. As

a result, Valley Forge says, Exhibit H was not part of the contract and there could be no requirement that Jenkins add the Management Team as an additional insured, meaning its own policy with Jenkins does not cover the Management Team.

After discovery, both sides moved for summary judgment. The district court denied both motions, concluding that Valley Forge's liability turns in part on a disputed question of material fact (whether Exhibit H is part of the contract). The parties agreed to a bench trial, after which the district court found that "[t]he attached 'Exhibit H' was not intended by the parties to be part of the [contract]." R.45 at 8. Without that exhibit, the Management Team and Lexington could not show that Valley Forge had a duty to help defend against the tort suit.

## II.

On appeal, both sides agree that the district court should have granted summary judgment—just for them, not for their opponent. We disagree with the initial premise. The case hinges on whether Exhibit H is part of the contract. The parties dispute that question, and there is evidence on both sides. "Whether a given document is part of a written contract is a question of fact." *Thomasville Furniture Indus. v. JGR, Inc.*, 3 F. App'x 467, 473 (6th Cir. 2001); *see also 46th Circuit Trial Court v. Crawford County*, 702 N.W.2d 588, 596–97 (Mich. App. 2005) ("Issues regarding the formation of a valid contract are all questions of fact," while "[i]ssues of contract interpretation are questions of law."), *rev'd on other grounds*, 719 N.W.2d 553 (Mich. 2006); *Klapp v. United Ins. Grp. Agency*, 663 N.W.2d 447, 453–54 (Mich. 2003) ("It is well settled that the meaning of an ambiguous contract is a question of fact."). The district court correctly denied

summary judgment to all parties.  *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

For much the same reason, the Management Team and Lexington face a steep climb in their effort to reverse the district court's factual finding that Exhibit H was not part of the contract.  We review a district court's findings of fact after a bench trial for clear error.  *Dillon v. Cobra Power Corp.*, 560 F.3d 591, 599 (6th Cir. 2009); *see also Meridian Leasing, Inc. v. Assoc'd Aviation Underwriters*, 409 F.3d 342, 346 (6th Cir. 2005) (in a contract dispute, the trial court's "resolution of ambiguity based on extrinsic evidence may not be overturned unless clearly erroneous").  We thus must affirm the district court's judgment as long as it reflects a "plausible" and "permissible view[ ] of the evidence."  *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985).  Only if we are "left with the definite and firm conviction that a mistake has been committed" may we reverse.  *Id.* at 573.

The district court gave half a dozen reasons for its conclusion that Exhibit H was not part of the contract:  the agreement did not refer to it; the other exhibits were sequentially lettered A through D, meaning that skipping ahead to H would leave out E, F, and G; Exhibit H is written in a different font and format from the other exhibits; it repeatedly refers to "the Architect" as a party to the agreement, but that term is never defined and Jenkins Construction is not an architectural firm; the insurance requirements it lays out differ in key respects from the terms of Jenkins's policy with Valley Forge; and James Jenkins (the owner of Jenkins Construction) testified that Exhibit H was not part of the contract and that he would not have signed the contract if it were.  These reasons all have force on their own, and they are particularly persuasive—and supportive of the district court's finding—in combination.

The Management Team and Lexington offer several responses, all of which come up short. They first argue that, because both sides' copies of the contract "physically included Exhibit H, longstanding principles of Michigan contract law required [the court] to find that Exhibit H was part of the contract." Br. at 23. But they cite no case for that proposition, longstanding or otherwise. On reflection, that is not surprising. That a document is attached to a contract does not conclusively make it part of the contract, particularly where the contract "expressly incorporates certain . . . documents, but does not incorporate" the document in question. *Teg-Paradigm Envt'l, Inc. v. United States*, 465 F.3d 1329, 1341 (Fed. Cir. 2006); *see also Greene v. Hanover Ins. Co.*, 700 So. 2d 1354, 1356 n.3 (Ala. 1997) (separate document physically attached to insurance contract is part of the contract as a matter of law only if there is "sufficient reference . . . to identify the papers as related"); *Essex Ins. Co. v. Fieldhouse, Inc.*, 506 N.W.2d 772, 777 (Iowa 1993) (same). The attached document could be a separate contract or something else. Indeed, if it is possible that the label "Exhibit H" was a written error, it is just as possible that the inclusion of Exhibit H with the contract reflects a collating error in collecting the relevant documents. Because the contract itself is ambiguous about whether Exhibit H is included, the court may consider evidence beyond the document to make this determination. *See Klapp*, 663 N.W.2d at 454; *NAG Enters. v. All State Indus.*, 285 N.W.2d 770, 771–72 (Mich. 1979). That Exhibit H was attached to the contract no doubt suggests it was part of the contract, but this physical reality does not on its own compel that finding.

Most of the rest of the Management Team's and Lexington's brief in effect asks us to revisit the district court's weighing of other pieces of evidence. They argue: the labeling of Exhibit H was

"simply a typographical error"; the lower court's reliance on font and formatting "elevated form over substance"; Exhibit H's reference to an architectural firm "goes toward the interpretation of Exhibit H . . . not whether Exhibit H was part of the contract"; the discrepancy between Exhibit H's insurance requirements and the terms of Jenkins's policy merely indicates Jenkins breached the contract; and the trial testimony suggests Exhibit H is part of the contract. Management Team Br. at 23–30. Those arguments may be persuasive, some more so than others, but they do not compel such a finding. The resolution of the issue hinges on questions at the core of the district court's authority and competence: How likely is it that these parties mistakenly referred to the wrong exhibit? Or that they would use a different font and format for one exhibit? Or that Jenkins Construction could reasonably be mistaken for an architectural firm? How careful would Jenkins have been in ensuring that its insurance policy complied with contractual requirements? Which witnesses were more credible? On the record before us, the district court could have gone either way. It sided with Valley Forge. We see no cognizable basis for altering that finding.

Without Exhibit H in the contract, the Management Team and Lexington have no leg to stand on. No other written agreement obligates Jenkins to name the Management Team as an additional insured on any policy.

III.

For these reasons, we affirm.